IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| James Gordon Gibson, | ) | C/A No. 2:15-CV-5076-MGL-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SCDMH Supervising Director Holly Scaturo; | ) | |
| SCDMH Medical Supervisor Gaylan Sanders; | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The plaintiff, James Gordon Gibson ("Plaintiff"), is currently in the custody of the Sexually Violent Predator Treatment Program ("SVPTP") of the South Carolina Department of Mental Health ("SCDMH"), having been civilly committed as a sexually violent predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act, S.C. Code Ann. § 44-48-10 through § 44-48-170 ("SVPA"). On December 20, 2015,[1] the Plaintiff filed this action *pro se* and *in forma pauperis* against SCDMH Supervising Director Holly Scaturo ("Scaturo") and SCDMH Medical Supervisor Gaylan Sanders ("Sanders") in their official capacities, alleging that Scaturo and Sanders (collectively, the "Defendants") violated his constitutional rights by requiring him to pay for his partial dentures. (*See generally*, Compl., Dkt. No. 1.)

This matter is before the court on the Defendants' Motion for Summary Judgment. (Dkt. No. 20.) On July 5, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the

---

[1] *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (a state prisoner's *pro se* pleading is "filed" at the moment of delivery to prison authorities for forwarding to the District Court. As the South Carolina Department of Corrections ("SCDC") did not mark the date it received the Plaintiff's envelope, the court will use the date that the Plaintiff signed his Verification of Service as the "filing" date. (Dkt. 1 at 10.)

1

Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the Defendants' Motion. (Dkt. No. 21.) On August 12, 2016, the Plaintiff timely responded to the Defendants' Motion with an "Objection to Notice of Motion and Motion of Summary Judgment on Behalf of Defendants." (Dkt. No. 23.) On September 1, 2016, the Defendants filed a Reply to the Plaintiff's Objection, after receiving an extension of time in which to do so. (Dkt. No. 27.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons stated herein, the undersigned recommends that the Defendants' Motion for Summary Judgment be granted.

## FACTS

The Plaintiff's verified complaint[2] states that he was admitted to the SVPTP in October or November, 2008, and that in July 2009, he signed an agreement which stated that the SCDMH "would provide, at no cost to Plaintiff, all reasonable medical necessities which includes: (1). Dental Care; (2). Dentures; (3). Necessary reallignment [sic] of dentures." (Compl. ¶ 6.) The Plaintiff has not provided the court with a copy of this agreement.

The SCDMH and SVPTP policy ("Policy") provides that "if any medical procedure, appliance, device, or treatment is determined by an SCDMH medical professional to be 'medically necessary' to a resident, SCDMH will cover the cost of that medical procedure,

---

[2] In this Circuit, verified complaints by *pro se* litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citations omitted). As the Plaintiff has filed a verified complaint, the court has considered the factual allegations set forth therein in issuing a recommendation in this case.

appliance, device, or treatment. This [P]olicy applies to all residents equally." (Scaturo Aff. ¶ 11, Dkt. No. 20-2; Scaturo Ex. F, Dkt. No. 20-8.) The Policy further provides that "residents are required to pay for any procedure, appliance, medical device, or any type of treatment that is determined not to be medically necessary. . . . This policy is posted in both [SVPTP] units so residents are aware that they are required to pay for any type of medical treatment that is not medically necessary." (Scaturo Aff. ¶ 11.)

The Plaintiff's medical records establish that the Plaintiff was first seen in the SCDMH dental clinic in September, 2008. (Scaturo Aff. ¶ 7; Scaturo Ex. A at 32, Dkt. No. 20-3.) On January 15, 2009, he was seen in the dental clinic, noted to have "several missing teeth, and was "recommended" for "upper & lower partial" dentures. (Scaturo Ex. A at 30, Dkt. No. 20-3.) Dental impressions were taken on February 10, 2009, and he was seen again in the dental clinic on March 5, 2009. (Scaturo Ex. A at 28, Dkt. No. 20-3.) According to the Plaintiff, the SCDMH provided him with these dentures free of charge, which shows a "prior finding of medical necessity." (Pl.'s Obj. ¶ 2.A.i ).) The dental record reflects that the dentures were adjusted on January 19, 2010. (Scaturo Ex. A at 23, Dkt. No. 20-3.)

On February 16, 2011, the Plaintiff submitted a Request to Staff asking to have his "dentures altered to again be actually usable . . . ." (Scaturo Ex. C, Dkt. No. 20-5.) The unsigned Disposition by Staff Member states: "Gibson paying for teeth." (*Id.*) Scaturo avers: "I personally responded to [the Plaintiff's] Request and advised him that he would be required to pay for his dentures to be altered or adjusted pursuant to SCDMH policy." (Scaturo Aff. ¶ 8; *see also* Scaturo Aff. Ex. C, Dkt. No. 20-5.) The Plaintiff submitted another Request to Staff on

3

March 8, 2011, asking about the cost to replace his upper and lower dentures and how much he would be charged. He wrote:

> I spoke with Doctor Shammy about denture replacements. What was the amount of uppers and lowers; and how would I be charged?
>
> How much from each $29.00 paycheck?

(Scaturo Aff. Ex. D, Dkt. No. 20-6.) In addition, the record shows that on May 14, 2012, the Plaintiff was billed by Land Dental Laboratory for $148.00 for an acrylic partial denture. (Scaturo Aff. ¶ 10; *see also* Scaturo Aff. Ex. E, Dkt. No. 20-7.) According to Scaturo, this partial denture was not obtained through the SCDMH dental clinic; instead, the Plaintiff asked his sister to find a place which could fix his partial denture, and she determined that it could be repaired at the Land Dental Laboratory. (Scaturo Aff. ¶ 10.)

On October 6, 2014, the Plaintiff asked for a refitting of his lower plate. (Compl. ¶ 8.) The next day, the Plaintiff was seen in "Medical" by Nurse Practitioner Michelle Myers ("Myers"). (*Id.* ¶ 9; Myers Aff. ¶ 5, Dkt. No. 20-11; Myers Aff. Ex. A, Dkt. No. 20-12.) Myers referred him to the SCDMH dental clinic for an adjustment of his lower denture. (Myers Aff. ¶ 5; *see also* Scaturo Ex. A at 10, Dkt. No. 20-3.) On January 8, 2015, the Plaintiff was seen for his annual dental exam and stated that his lower partial denture no longer fit after it sat in a dry denture cup for a period of time. (Scaturo Ex. A at 9, Dkt. No. 20-3.) The Plaintiff submitted a Medical Request on February 27, 2015 wherein he complained of a toothache and asked for his teeth to be extracted, writing: "I want and need dentures. So please set this up as soon [as] possible." (Myers Aff. ¶ 6; Myers Aff. Ex. B, Dkt. No. 20-13; *see also* Compl. ¶ 10.) Myers saw the Plaintiff on March 3, 2015 and referred him to the SCDMH dental clinic for complaints of

4

tooth pain and his request for tooth extraction. (Compl. ¶ 11; Myers Aff. ¶ 6; Myers Aff. Ex. B, Dkt. No. 20-13.) The Plaintiff states that he was seen by the dental staff in April but there is no medical record supporting this claim. (Compl. ¶ 12; *cf.* Scaturo Ex. A, Dkt. No. 20-3.) On June 23, 2015, Myers referred him to the dental clinic for another adjustment of his lower denture. (Myers Aff. ¶ 7.) On July 13, 2015, the Plaintiff was seen in the dental clinic for tooth pain and was prescribed an antibiotic and scheduled for tooth extractions. (Myers Aff. ¶ 8; Scaturo Ex. A at 8, Dkt. No. 20-3.) On July 20, 2015, the Plaintiff had four teeth extracted. (Myers Aff. ¶ 9; Compl. ¶ 12; Scaturo Ex. A at 7, Dkt. No. 20-3.) The Plaintiff was left with three teeth in his bottom jaw and six teeth in his upper jaw. (Compl. ¶ 12.)

On July 24, 2015, the Plaintiff submitted a Medical Request asking to be outfitted for upper and lower plates. (Myers Aff. ¶ 10; Myers Aff. Ex. C, Dkt. No. 20-14.) The Plaintiff was seen by Medical on July 27, 2015, and referred to the dental clinic. (Myers Aff. ¶ 10.) The Plaintiff avers that the "[d]ental clinic consulted with Medical personnel . . . and conveyed to them my need for dentures and prescribed dentures." (Compl. ¶ 13.)

The Plaintiff's dental clinic records dated August 11, 2015 indicate that the Plaintiff was seen by SCDMH's dentist, Dr. Thomas W. Talbert ("Dr. Talbert"), for a consultation regarding upper and lower partial dentures. (Myers Aff. ¶ 11; Scaturo Aff. ¶ 14; Scaturo Ex. A at 6, Dkt. No. 20-3.) Dr. Talbert's notes state: "Pt. shows no signs of malnutrition" and "appoint in dental clinic when F-22 form is received."[3] (Scaturo Ex. A at 6, Dkt. No. 20-3.) Scaturo explains that the Plaintiff "was advised that once he obtained the money to pay for the dentures and submitted

---

[3] The F-22 form, also known as the "Request for Patient Fund Withdrawal," is the form which allows a resident of the SCDMH to arrange for cash withdrawals or check requests. (Scaturo Ex. G, Dkt. No. 20-9.)

5

an F-22 Form . . . he would be scheduled to receive his upper and lower partial dentures." (Scaturo Aff. ¶ 15; *see also* Myers Aff. ¶ 11.)

The Plaintiff claims that Myers told him "she was attempting to get authorization for dentures . . . from . . . Defendants Scaturo and Sanders[.]" (Compl. ¶ 14.) Myers does not address this statement, but avers that "that Residents of the SVPTP are required to pay for any medical treatment that is determined not to be medically necessary." (Myers Aff. ¶ 14.) Sanders, too, states: "[I]f a procedure or medical device is not medically necessary, that procedure or device will only be provided if the resident agrees to pay the full cost of that procedure or medical device." (Sanders Aff. ¶ 5, Dkt. No. 20-16.) Scaturo contends:

> SCDMH has not provided upper and lower partial dentures for [the Plaintiff] or determined those dentures to be medically necessary based upon the professional judgment of SCDMH dentists, including Dr. Talbert. . . . [N]one of the SCDMH dentists that [the Plaintiff] has seen ever made a determination that his dentures were medically necessary.

(Scaturo Aff. ¶ 16.) Myers has reviewed the Plaintiff's medical records from October 3, 2014 to April 30, 2016 and "did not see any determination from either an SCDMH medical professional or outside medical professional stating that his upper and lower partial dentures were medically necessary." (Myers Aff. ¶ 15.)

The Plaintiff acknowledges that he "was told at a later date that he must pre-pay the dentures personally." (Compl. ¶ 15.) Accordingly, on August 31, 2015, the Plaintiff submitted a Medical Request which asked:

> Can I Please get the estimate for dentures?
>
> I awaited the estimate for my dentures but since not hearing anything for a few weeks, thought it effective to file this Medical Request asking what it is going to cost

6

>     me to get these dentures.  I need these dentures so that I can properly chew my food
>     so that I don't get choked . . . .

(Dkt. No. 1-1 at 3; Myers Aff. ¶ 12; Myers Aff. Ex. 20-15.)  On September 2, 2015, Myers responded:  "Per dental clinic your dentures will be $298 for upper and $298 for lower (subject to change)[.]"  (Compl. ¶¶ 16-17; Dkt. No. 1-1 at 3; Myers Aff. ¶ 12; Myers Aff. Ex. D, Dkt. No. 20-15.)  Myers avers:

>     When I informed [the Plaintiff] of the cost of his upper and lower dentures, he
>     seemed appreciative of the information and stated he would make his sister aware of
>     the price and ask her to send the money.  It was further agreed that [the Plaintiff]
>     would make me aware when he had received the money for his dentures from his
>     sister so that an F-22 form could be completed and a dental appointment made.

(Myers Aff. ¶ 13.)  Myers further states: "[I]t is my understanding that the dental clinic [is] waiting for [the Plaintiff] to pay for his upper and lower partial dentures as there ha[s] been no determination whatsoever that they were medically necessary."  (Myers Aff. ¶ 16.)

The Plaintiff claims that from June 2013 to the date of the complaint, he has suffered various problems with his gums, along with toothaches, cavities, mouth pain, and choking while eating, and that he has a lowered sense of self esteem.  (Compl. ¶ 18.)  The Plaintiff further alleges that from September 25, 2008 to the present, the Defendants "have provided other similarly situated residents, at no cost, with medical equipment such as walkers, wheelchairs, body braces, hearing aids, and dentures.  (*Id.* ¶ 19.)  The Plaintiff contends that Scaturo and Sanders acted outside of their official capacities and with deliberate indifference to his medical needs when they denied him partial dentures at no cost.  (*Id.* ¶¶ 21-22.)  He seeks declaratory relief (free dentures, free continuing dental care, and any other medically necessary items needed in the future at no cost) specifically in accordance with "Belding v. SCDMH, Gintoli, :3:04-

7

2416-JFA-JRM; and, :3:08-0367-JFA-JRM."[4]  (*Id.* ¶ 23.)  He also seeks the costs of this action, and the right to be free from retaliation for filing the complaint.[5]  (*Id.* ¶ 24.)

## STANDARDS OF REVIEW

### Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'"  *Id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary

---

[4] *Belding v. Gintoli*, No. C.A. 3:04-2416-JFA, 2006 WL 2707200 (D.S.C. Sept. 15, 2006); *Belding v. Gintoli*, No. C.A. 3:08-0367-JFA.

[5] The Plaintiff also claims that for "at least three (3) and one-half years now" he has been trying "to have the Defendant's [sic] replace his upper partial plate that was thrown away during a shakedown of his room."  (Compl. ¶ 7.)  The Defendants correctly state that to the extent that the Plaintiff is attempting to bring a claim for the alleged loss of his personal property, this claim is not cognizable under 42 U.S.C. § 1983.  (Defs.' Mem. 2, n.1, Dkt. No. 20-1, citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).  The Plaintiff has stated in his Objection that he "is not claiming lost property; but for replacement of dentures intentionally thrown away by staff/officers during room shake-down: And an up-dated (refit) of lower dentures."  (Pl. Obj. ¶ 2.A.iii).)  The court finds that the claim, to the extent it seeks redress for the lost dentures, would be barred by the applicable statute of limitations.  *See* S.C. Code § 15-3-530 (three year statute of limitations).

8

judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**The *pro se* Complaint**

The court is required to liberally construe *pro se* complaints, *Estelle v. Gamble,* 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v. Rowe,* 449 U.S. 5, 9-10 (1980) (per curiam). The mandated liberal construction afforded *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Further, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990).

## **ANALYSIS**

### **Introduction**

Under the SVPA, a person convicted of a sexually violent offense may continue to be held following release from a prison sentence if he or she is classified as an SVP. S.C. Code Ann. §§ 44-48-60, 44-48-70. The Plaintiff, having been so classified, is being held by the

9

SCDMH pursuant to the provisions of the SVPA. Both the SVPA and its procedures have been upheld as a constitutionally valid exercise of the State's power to protect citizens. *See In re Treatment and Care of Luckabaugh*, 568 S.E.2d 338, 348 (S.C. 2002). The SVPA "creates a system of civil, not criminal, detention . . . ." *Michau v. Charleston Cnty.*, 434 F.3d 725, 727 (4th Cir. 2006). As a civilly committed person, the Plaintiff is not a "prisoner" as that term is defined in the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(h) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."). Because the Plaintiff was not a prisoner under the PLRA at the time he filed his complaint, the PLRA's exhaustion requirement is inapplicable to this action. *See Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) (per curiam) ("[I]t is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies.")).

**The Plaintiff's Claims**

The Fourteenth Amendment's due process clause requires providing involuntarily civilly committed persons with "adequate food, shelter, clothing, . . . medical care" and personal safety. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). *Youngberg* has specifically been applied to cases addressing the circumstances under which SCDMH must provide dentures to its involuntary committees. *See*, *e.g.*, *Kollyns v. Gintoli*, C.A. No. 3:04-2322-JFA, 2006 WL 2706962 (D.S.C. Sept. 15, 2006). Thus, *Youngberg* requires that the Plaintiff's claims in this action be evaluated under the due process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535, n.16 (1979).

10

The court construes the Plaintiff's claims as cognizable under 42 U.S.C. § 1983, which "is not itself a source of substantive rights," but instead is "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). To state a claim pursuant to § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); *see also Gomez v. Toledo*, 446 U.S. 635, 540 (1983); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

As a threshold matter, the Plaintiff's complaint is barred by the statute of limitations. Although the text of § 1983 does not set forth a specific statute of limitations, the United States Supreme Court has held that in a personal injury case, a federal court should adopt the applicable state law statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985), superseded by statute on other grounds as stated in *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004); *see also Owens v. Okure*, 488 U.S. 253, 249-50 (1989) ("We accordingly hold that where state law provides multiple statutes of limitation for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.")).

In South Carolina, the general statute of limitations for a personal injury claim is three years. *See* S.C. Code Ann. § 15-3-530; *see also Hamilton v. Middleton*, C.A. No. 4:02-1952-23, 2003 WL 23851098, at *4 (D.S.C. June 20, 2003) ("The statute of limitations for section 1983 causes of action arising in South Carolina is three years."). As previously mentioned, the Plaintiff filed his complaint on December 20, 2015, so his claim must have accrued after

December 20, 2012 for it to be within the statute of limitations. It is undisputed that on February 16, 2011, the Plaintiff made a Request to Staff to have his dentures altered, and Scaturo told the Plaintiff that SCDMH policy required him to pay for his dentures to be altered or adjusted. (Scaturo Aff. ¶ 8; *see also* Scaturo Aff. Ex. C, Dkt. No. 20-5.) The Plaintiff acknowledged in his Request to Staff dated March 8, 2011 that he was aware that he would have to pay for his dentures, as he asked how much money would be deducted from each of his paychecks. (Scaturo Aff. Ex. D, Dkt. No. 20-6.) The record also shows that on May 14, 2012, the Plaintiff was billed by Land Dental Laboratory for $148.00 for an acrylic partial denture, which the Plaintiff arranged to have fixed outside of the SCDMH. (Scaturo Aff. ¶ 10; *see also* Scaturo Aff. Ex. E, Dkt. No. 20-7.) According to Scaturo, the SCDMH has no record to suggest that this partial denture was medically necessary, and it was not obtained through the SCDMH dental clinic; instead, the Plaintiff asked his sister to find a place which could fix his partial denture, and she determined that it could be repaired at the Land Dental Laboratory. (Scaturo Aff. ¶ 10.) Therefore, the court concludes that even if the Plaintiff had never read the Policy which is posted in the SVPTP regarding a resident's responsibility to pay for any procedure, appliance, medical device or treatment that is determined not to be medically necessary, the Plaintiff was aware, by February 2011, that he had to pay for his dentures because they were determined not to be medically necessary. He was told again by Dr. Talbert in 2015 that he needed to prepay for his dentures. The Plaintiff's claims against the Defendants are barred by the statute of limitations, and therefore this court recommends that the Defendants' motion for summary judgment be granted on this ground.

However, as the District Court may disagree with this recommendation, the undersigned will proceed to analyze the Plaintiff's claims that the Defendants have violated his constitutional right to due process because he is being required to prepay for dentures, and to equal protection because he believes that other civilly committed persons in the custody of SCDMH are receiving free medical equipment, such as dentures. (*See* Compl. ¶¶ 19, 23.)

**Due Process Claims**

As mentioned previously, the court must analyze the claims of the Plaintiff, as an involuntarily committed individual, under the standard set forth by the Supreme Court in *Youngberg*. When deciding whether a civilly-institutionalized individual's constitutional rights have been violated, a court must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. *Youngberg*, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323; *see also Patten v. Nichols*, 274 F.3d 829, 837 n.3, 838 (4th Cir. 2001) (medical claims of an involuntarily civilly committed person are evaluated under the professional judgment standard, not the Eighth Amendment's deliberate indifference standard); *United States v. Charters*, 863 F.2d 302, 312 (4th Cir. 1988) (*Youngberg* standard met where medical care is provided pursuant to the "professional judgment [of] those who have the responsibility for making medical decisions . . . ."). Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal

operations of state institutions. *Youngberg*, 457 U.S. at 322; *McClam v. Chavez*, C.A. No. 3:05-cv-1765-TLW-JRM, 2006 WL 1663797, at *2 (D.S.C. June 8, 2006).

The Plaintiff has not submitted any evidence, beyond his own opinion, that his partial upper and lower dentures are medically necessary. In fact, the Plaintiff's medical records reflect that there has never been a determination that his upper and lower partial dentures were medically necessary. (*See* Scaturo Aff. ¶¶ 15-16, 18; Myers Aff. ¶ 15.) Furthermore, the Plaintiff has set forth no evidence that Dr. Talbert violated *Youngberg's* professional judgment standard when he determined that the Plaintiff's dentures were not medically necessary, and that the Plaintiff would have to pay for them. "[D]ecisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable [state] institutions . . . to continue to function . . . ." *Youngberg*, 457 U.S. at 324. The constitution is not violated when a resident of the SVPTP is required to pay for dentures that have been determined not to be medically necessary. *Hughes v. Scaturo*, C.A. No. 3:08-429-CMC-PJG, 2009 WL 497506, at *4 (D.S.C. Feb. 26, 2009). The Plaintiff's "dissatisfaction with his treatment alone is insufficient to support a claim of a constitutional violation." *Id.*

## Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment requires that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own." *McClam*, 2006 WL 1663797, at *2 (citing *DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989)); *see also Youngberg*, 457 U.S. at 324. "To succeed on an equal

14

protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Once that is shown, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

The Plaintiff has failed to establish an equal protection claim because he has not offered any evidence to show that he, in fact, has been treated differently from others with whom he is similarly situated. The Plaintiff has not submitted any affidavits, or any evidence whatsoever, in support of his allegation of unequal treatment.

### Eleventh Amendment Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of the States' sovereign immunity found in the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989). As the Supreme Court stated in *Will*:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

*Will*, 491 U.S. at 66 (citation omitted). Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (citations omitted), because "a

suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself." *Will*, 491 U.S. at 71. To the extent the Plaintiff brings claims against the Defendants in their official capacities (Compl. ¶¶ 2-3), those claims are barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71.

### Respondeat Superior

The Plaintiff has filed suit against Scaturo, who is the Supervising Director of the SCDMH, and Sanders, the Medical Supervisor of the SCDMH. To the extent that the Plaintiff is suing these persons as supervisors or managers of persons who allegedly committed misconduct, the Plaintiff's action is barred. The doctrines of vicarious liability and respondeat superior do not apply in a § 1983 actions. *Vinnedge v. Gibbs*, 550 F.2d 926, 927-29 (4th Cir. 1977). Thus, the Plaintiff fails to state a claim upon which relief may be granted as to both Defendants because he cannot sue them based on their status as supervisors.

### CONCLUSION

Wherefore, it is **RECOMMENDED** that the Defendants' Motion for Summary Judgment (Dkt. No. 20) be **GRANTED**.

IT IS SO RECOMMENDED.

January 23, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).